At the outset, I think it's worth noting that the appellant this morning has the unenviable task of convincing this panel, or attempting to persuade it at least, that one of its esteemed colleagues, Judge Kaczynski, made errors in granting Tesoro's motion under Rule 52C. Oh, you, you, that's an advantage you have. Judge Kaczynski's sense of humor as well. In the wake of the Exxon Valdez back in 1989, and the passage of the Oil Pollution Act in 1990, issues surrounding loading and discharge of petroleum products from vessels in navigable waters of the United States created, to say the least, a highly regulated field. In fact, the very regulations cited to this Court with regard to the Tesoro's Operations Manual, which are the focus of the appellant's arguments here today, were passed in September of 1990 in response. Counsel, I have a, let's focus that argument, because as I read the District Court's opinion, and as I understand the testimony, there's no regulation that's been violated here, because the regulation does not require around-the-ship spacing when it's an offloading operation. There's no testimony and no evidence, I think, Judge Kaczynski found, that there was a regulatory violation. My understanding is you're relying on the Operations Manual. And if I take your argument, it is that notwithstanding that the regulations don't require it, the Operations Manual does, and that creates the standard of care. I would like you to cite me a case where the voluntary assumption of a duty, if you will, creates a binding standard of care as opposed to its evidence, as the restatement third, I think, treats it as evidence of a violation of duty, but not negligence per se. So what's your case, if I've correctly understood your progression of your theories, and that's what Judge Kaczynski said. He specifically ruled that he was not satisfied, there was no violation of the regulation, and he didn't think you'd established the common law violation either. And I've been searching for a case which says, on these kinds of facts, where a defendant undertakes a higher standard of care. I know at trial, after Judge Kaczynski ruled, there was an invocation of the, you have to operate in accordance with your Operations Manual. But as he said, there's nothing in that that says there's a regulatory violation. I think that if you don't operate and, you know. First of all, Your Honor, I think you've correctly framed the issue, and I think everything you've stated is correct. That we did not mean to suggest that there is, that the evidence of the custom established by the Tesoro Regulations or Operations Manual would in itself be negligence. It is indeed evidence of negligence, and we didn't cite the case to the Court for the proposition that it is in fact proof of negligence, period, because there isn't one. Okay, but the Court, I think, is missing one key element here. There's two parts of this argument. One is that Tesoro had its own manual, which it was free to have, and that was required. This is, again, it's a highly regulated field. This manual is required by regulations, right? It's required both by the regulations cited to the Court and one we cited to the Court yesterday, which is the Public Resource Code, California Public Resource Code 8758, dealing with Marine Facility Operations Manuals. That code, right, deals with the examination of the manuals, the passage of the manuals, the approval of the manuals, and more importantly, in Section F says, once an operator's operations manual has been approved, all equipment and operations of the operator's marine facility shall be maintained or be carried out in accordance with the operations manual. Okay, so the failure to heed the principles of your operations manual is a violation of a regulation, is a violation of the Public Resource Code. Yes, Your Honor. Do I pronounce your name right? Is it Brukeleary, sir? Brukeleary, Your Honor. Thank you. Brukeleary. My understanding is, I think we all stipulate that violation of the manual is not negligence per se. I think I heard you just say that. But my understanding of Judge Kaczynski's logic of his ruling is that somehow the manual was ambiguous. Is that, do I understand that correctly? Is that what he ruled? He did, Your Honor. He believed the manual was ambiguous. Okay, that's the part I don't get about his ruling. Can you shed any light on that? Do you want to discuss that to make the manual look pretty clear? I can reread Section O of the manual in that regard, Your Honor. I don't think it could be any more clear. But let me add to that that James Porter from State Lands testified very clearly, and he was the gentleman who was responsible for approving the manual and reading the manual, and applying and enforcing these manuals with regard to these terminals. And his opinion was that the Tesoro Manual in Section O could not have been more clear and required a boom that went completely around the vessel, parroting the language of Section O, with a four-foot set-off. So I did suggest to Judge Kaczynski that he should credit that testimony, and Judge Kaczynski was clear that he didn't believe he was obligated to do so. Right. Sorry, could you, who are you citing for that proposition? James Porter, who was State. Porter said, as I, officials could not comply with the manual so long as it complied with regulations. ER-4-3, you can't write violations when regulations are being complied with just because their operations manual says something different. ER-4-10, we couldn't enforce something they performed in compliance with regulation, even though their operations manual may have been set to a higher standard. You're not, now we're talking about apples and oranges. We're talking about the very regulations that we admitted from the outset of the trial, and admit here readily today, do not, were not violated here by Tesoro. We're not talking about the regulation that required them to follow their manual. No. When he says we can't cite them for a violation of their operations manual, then I don't know what distinction you're drawing. He did, in fact, say that it was a violation, and he said that we probably wouldn't cite them, we would probably talk to them, but he admitted that it was, in fact, a violation to act in a manner not in accordance with the manual. Okay, suppose. And the statute makes that clear in any event. Suppose you can't cite them, but suppose it's not a violation of the regulation, it still bears, does it not, on the standard of care? I'm sorry, I get to hear you. I'm saying, okay, so you can't give them a ticket, you can't cite them. That doesn't mean it's not the standard of care. That's correct. To the standard of care. And I don't think he said, I don't think he said that you couldn't cite them, he said that in practice they likely wouldn't cite them. Okay, well, whether you could or wouldn't, that's not the point. The point is it's evidence of what the standard of care is. That is correct. If the manual is ambiguous, I understand Judge Kaczynski's point. You can't make heads or tails of it if it's ambiguous, but if it's not ambiguous, I don't understand why it isn't evidence of the standard of care, whether they can or would be cited or not. That is precisely our position, Your Honor. I think it is evidence of the standard of care. I find that the standard of care was lower than what was set out in Tesoro's manual, right? Correct. At least by way of the regulations. Right. Okay, so they didn't comply with their manual. That doesn't render them negligent. You've conceded that that's true. So I guess I don't, if you had put on persuasive expert testimony that the custom and practice in the industry, you'd have a better case. But you didn't, according to Judge Kaczynski. He found that the standard of care in the industry was basically what the substantive regulation itself sets out. And so the fact that Tesoro's manuals promise to do something higher is neither here nor there. Yeah, I think he missed the point that they're obligated to comply with the manual, and that the failure to comply with the manual pursuant to the code I just read you isn't... It's negligence though. What? It's not negligence. It's evidence of negligence. Fine, but he found more persuasive the evidence that the standard of care in the industry was lower. So unless you can get around that, it seems to me you're going to lose anyway. Why am I wrong on that? That's what I, that's where I was left with after reading all this stuff. So why am I wrong on that? Well, I mean the, because of the, going back to what I was saying earlier when we first started the discussion, this is a highly regulated field. And what you're asking, what the judge did is essentially ignore one of the key regulations. We, for one, which is the one I just cited to the court. In other words, that regulation makes it clear that if you set a standard, you got to comply with it. And more importantly, if you look at section, the last section of the code I cited to you, it makes the vessel, section G of public resource code 8758, says all vessels docked at any marine facility in the state shall comply with the terms of the operations manual of the marine facility. In other words, they're mutual requirements. The vessel's entitled to rely, and the captain testified that he did rely on the terminal for, for the purposes of setting up the appropriate boom. Yeah. I mean, maybe you'd have a breach of contract action against an operator for not complying with the manual of somehow that they had contracted with you to give, to provide a higher standard of care than, than negligence law requires. But I guess I'm, that doesn't, your answer didn't, doesn't seem to me to be responsive to the finding that the standard of care for purpose of negligence law is down here. Tesoro met that. Yes, they might have set out a higher standard of care in their manual that they didn't comply with, but that doesn't render them negligent. That's, that's where I'm stuck. Well, I think case law suggests it's evidence of negligence. And the point is that the judge decided that it wasn't evidence of negligence at all. But let me turn to the second point, which was the judge's strange decision to discount and not allow our expert to testify us to the custom and what he did to establish the custom and practice in the port with regard to booming. First, he excluded that testimony, and then in his opinion said he allowed it in for some purpose. He didn't give it much weight. Well, he, he didn't allow it. He, he refused to allow us to ask the witnesses, witness questions about his booming survey. He cut us off. He sustained the objection to the questions about the booming survey and without holding an evidentiary hearing, decided that our expert Frank Whipple could not testify about the booming survey that he did to determine, excuse me, to determine the custom and practice. And then in his, in his summary said that he didn't give it much weight. Well, he never heard from him. How could he decide to give it much weight? He never heard from Mr. Whipple at all. And, and, and he didn't hold an evidentiary hearing. We've offered evidences to demonstrate that there was no violation of Rule 26. There was no violation at all with regard to the, to Sorrell's opportunity to question this witness about his efforts to create a booming survey and his efforts to determine what the custom and practice was in the court. So we never got a chance to present that evidence at all. Why don't we stop there and we'll give you a couple of minutes for rebuttal. Thank you. Good morning. May it please the court. My name is Robert Crowder. I represent Sorrell Refining and Marketing Company, the Appley in this case. Did you speak up a bit? I can, Your Honor. Thank you. We just heard... Excuse me, we're getting some background noise. Judge Silverman, is, there's any phone conversations going in your office or where? Not that I'm aware of, no. I don't know where... I think it's an echo on our end. It's an echo. It is? Yeah. We have everything as low as we can get. I'm sorry. I didn't mean to point the finger at Judge Silverman, but he looks very angelic and quiet. Okay. We just heard what can only be characterized as a significant misrepresentation with respect to Mr. Porter. Mr. Porter is a state lands employee. We were just told that he's the one that reviews and approves these manuals. I'd just like to read from the record at 394... You're not accusing your colleague here of deliberately trying to mislead us, right? It's a misstatement at the least. We were specifically told that this is the man that's responsible for approving these manuals. That is not correct. Record 394, lines one through four, question, and you're the one reviewing these manuals, right? Answer, I'm not the approving officer. I do the initial review, and then it goes to our chain of command for who's opinion on these issues. Let me ask you this. I'm more concerned with what Judge Kaczynski found the standard of care to be. What exactly did he find the standard of care to be? What Judge Kaczynski weighed, he weighed very carefully significant elements. No, I didn't ask you what he weighed. I asked you, what was the standard of care? The standard of care is that really there is no requirement. It goes to the regulations. There is no requirement to boom the offshore side of an offloading or discharging tanker. That's clear per the regulations, and nothing about plaintiff's evidence changed that. In fact, their consultant... Doesn't the manual require something else? The manual does state that when handling persistent oil, you will boom the entire vessel. That's our situation here. That's our situation is that the vessel's cargo was a persistent oil, not the oil that spilled. Now, Judge Kaczynski didn't find the manual useful because he thought it was ambiguous. I'm not clear why the manual was ambiguous. I believe the answer to that question is, Your Honor, is that North of the vessel, you will boom the entire vessel, and that you will maintain a four-foot set-off. But nowhere does it say that four-foot set-off has to be maintained entirely 360 degrees around the circumference of the vessel. It does not say that. It says around the vessel. It says the boom placement is around the vessel. Not partially around the vessel or anything like that, just around the vessel. Correct. Now, that is Tesoro's practice, and the reason for that is a very practical reason. They have a boom at one end of the dock, and in order to comply with the regulation for a discharging or offloading tanker where you have to have a four-foot set-off from the boom around the entire vessel, because in doing that, you provide that four-foot set-off on the inboard side where it's required. Okay, but tell me again, what's ambiguous about the manual? Well, what Judge Kaczynski stated is that it could be read the way the plaintiff's counsel was urging the manual to be read, but that's not how he read it. He said it could be ambiguous. Yeah, but you're saying it could be ambiguous because it could be ambiguous. In what way is it ambiguous? How else would you read it when it says go around the vessel? How else would you read that except to mean go around the vessel? Your Honor, that's not the issue that I believe he was commenting on. There are two aspects of this provision, subdivision O of the manual. One is placement. Placement simply says go around the vessel, and there is no indication that that wasn't done. In fact, that was done here. So the only aspect that there is a difference of opinion being urged by the two sides is the four-foot spacer set-off on the offshore side. What does the manual say about the four feet? It simply says maintain a four-foot set-off. What's ambiguous about that? Well, it's being urged that that four-foot set-off is supposed to apply 360 degrees around the vessel. In our view, and it's supported by significant testimony that I'd be happy to share with the court, in our view, that reads into this manual description a requirement that is not there and that is inconsistent with the way that it's done and with the custom and practice. One more question and then I'll quit monopolizing this. Suppose we were to disagree with Judge Kaczynski that the manual is ambiguous, okay, just hypothetically. Suppose we were to say it's not ambiguous, it's pretty clear. Then where do we go from there? So in my view, the evidence supports the reading that the four-foot set-off is concerned with the same focus that the regulations require. Let's just say, I think what Judge Silverman is asking is, let's just say that we read the manual to require a four-foot set-off around 360 degrees, offloading or onloading. If you do. If we do. Okay. If you lose, I think that's what he's trying to ask you. No. I mean, if you read it that way, Judge Kaczynski found that there still was no determination of breach causation. I mean, if you find that duty, that that does impose a duty. Well, how can there be no breach? If he misunderstood what the manual required, how do we know that there wasn't a breach? If I understand it, the boom was hugging the hull of the vessel. It wasn't maintained that the four-foot set-off that the manual requires. Okay. It's important to keep in mind where this spill occurred. This spill did not occur in the cargo handling area at all. The cargo handling area of the ship is what's referred to as the parallel mid-body. It's the area between the bow and the ship's house at the stern, toward the stern. This spill occurred aft. Plaintiff's consultant testified that where this is the custom and practice, where the four-foot spacers are used, they're used in the cargo block. He quite clearly testified to that effect, and he also quite clearly testified to the effect that this spill occurred aft of the cargo block. How does that advance your position? The reason why this advances my position is where the spill occurred, you also have a difference in geometry of the ship's hull. You have a curvature of the hull there, and we have testimony that even with a four-foot set-off at the spill location, where the oil entered the water, a vertical line from the side of the rail at that location, directly down, is more than four feet beyond the intersection of the hull and the water. So there's a causation issue there. I thought, okay, because here the oil spilled out onto the deck and then just kind of went over the side and down, and that's how it got in the water? Well, it certainly pooled up on the deck for quite some time in the hour and a half that the pump was left running after it was inadvertently left running and not secured. And then it cascaded over the side at some point when it rose to the level that it overcame the barrier. So you're saying your side put on evidence that even with the four-foot set-off, the oil would have still fallen too far out and it would have gotten in the water anyway? Well, I'm saying the plaintiff bears the burden of proof on that, and since the captain himself estimated the distance between that intersection, that vertical line and the hull, at four feet, four to five feet, and you had another plaintiff witness who estimated it at three to six feet, I believe that was the captain. He cannot meet that burden. Okay. But I thought that Judge Kaczynski, forget about causation, forget about breach. I thought Judge Kaczynski also held that even if the manual required more than what I'm calling the substantive regulations, you know what I'm referring to, nonetheless, he found that the only duty imposed by tort law on Tesoro was to comply with the substantive regulations regardless of whether their manual said, I can't remember the terminology used, but it was like, you know, white glove. It was white glove. Yeah, whatever it was. But, and so I guess I'm surprised that wasn't your first response to Judge Silverman's question. Why is that not an alternative basis? That's an absolutely valid response as well. Well, why didn't you just give that response rather than come up with this causation rationale? I'm asking that honestly, because that's where I was leaning, but now I'm kind of doubting whether I was right. Well, I think you have both. I think that Judge Kaczynski's ruling is clear that appellant failed to meet any of the essential elements of its common law negligence claims. Well, I understood him to credit the Tesoro 30b6 witness who said you, Tesoro, did not And therefore, and then this gets into the whole California law of contract interpretation because Judge Silverman asked, why is it ambiguous, you know, under PG&E opinion, under California law, if you have a plausible argument that the contract language is ambiguous, then you can put in evidence to show that your proffered interpretation is the correct one. Now, it's a question of law how the contract language gets interpreted, but there are factual components, and I'm wondering if Judge Kaczynski's mindset, even though he attacked PG&E opinion historically, but it is the California law, notwithstanding Judge Kaczynski's critique. And you have Tesoro's argument that it's really the language is intended to comply with the law. So I'm wondering if we don't get into that kind of a mess in trying to figure out whether this standard is anything. Judge Watford posited a breach of contract claim. That's not what this is brought as. It doesn't take much for a California contract to be deemed ambiguous and subject, because the reason I'm thinking that is he was looking for custom and practice in the industry. He said, you know, he haven't shown me any custom and practice. And all this evidence has come in before me, and it seems the regulations themselves say it's only in this particular area when it's offloading, and there's no custom and practice. And you have some other testimony of the enforcers. So anyway, I just, that's what is troubling me about the case. So as I said, we have significant evidence that the Tesoro manual is to be interpreted in the way per the designated testimony of Captain McCoy. The actual regulators who provided testimony about being at the spill location and who saw the conditions at the time of the spill had both testified that they've been to Tesoro operations previously, and it was handled consistent with the way that they had previously seen it. It's also consistent with what Whipple, the consultant, testified, the use of these spacers. It's in the cargo area, not aft, not around the stern of the vessel. So all of the evidence other than counsel argument points to the setoff requirement is only in the cargo area, not where the spill occurred. The only way that this manual provision is different than what the vessel and that was done. Okay. Thank you. Thank you very much for your argument. Let's give your opponent two minutes for rebuttal. Just a few minutes. Thank you, Your Honor. Judge Wofford, I wanted to address briefly the question you raised about per se negligence. Just to clarify, we didn't contend that there was per se negligence with regard to any violation of the regular, the booming regulations because they don't apply here because of there is a discharge. But to be clear, we do contend that there's per se negligence with regard to the violation of the regulations requiring to comply with the standards set forth in their operations manual. That is a violation of the California Code of Regulations and of the Public Resource Code. Both require them, using the mandatory language shall, to comply with what is set forth in their operations manual. And that is in fact what they did not do in this case. I think negligence per se, let's just say that the custom practice in the industry were to not have the forefoot set off all the way around when you're doing offloading. Let's just say that that was, because I think that is what Judge Kaczynski found to be the custom practice. If that's true, then fine. Grant you that they might have violated in a technical sense this other regulation that says comply with your manual. But how is that negligence per se? Because the manual required that they use a forefoot set off. And if that's the case, why don't they cite them with reference to the operations manual and say, we don't care what other ships are doing. We will cite you for violations because your operations manual says you'll do it all around the ship. Understood, Your Honor. And I don't think the fact that they were cited or not cited is relevant to whether or not there was a breach of the manual and per se Order said he wouldn't cite. That's correct. He said he would not have cited them because they didn't, they wouldn't do that. But that doesn't mean that we hadn't established that there was a breach of that regulation. Okay. Thank you very much for your arguments in this case. Case just argued will stand submitted.
judges: Silverman, Fisher, Watford